**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No: 21-CR-087 (TJK)** |
| | : | |
| **MICHAEL SPARKS, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES' UNOPPOSED MOTION FOR EARLY RETURN OF TRIAL**
**SUBPOENAS PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 17(c)**

The United States of America, by and through undersigned counsel, respectfully moves this Court for an Order permitting it to issue subpoenas *duces tecum* inviting the subpoenaed entities to produce records prior to trial pursuant to Federal Rule of Criminal Procedure 17(c). The subpoenas, redacted versions of which are attached, would require four retailers to produce records relating to purchases made using defendant Michael Sparks's credit card, and one phone provider to produce records relating to communications relevant to this case. Defendant Sparks does not oppose this motion.

The subpoenas would require the subpoenaed entities to produce the documents at the currently scheduled May 5, 2023, status hearing. The government requests permission to invite the subpoenaed entities to produce the materials directly to the government in lieu of appearing in Court. Upon receipt of any documents returned in this fashion, the government will provide copies of the documents to counsel for the defendants. The government further requests permission to grant any necessary extensions of time to the subpoenaed parties for compliance with the subpoenas, should such requests be made.

In support of its requests, the government states as follows.

## I.     BACKGROUND

On November 9, 2022, a grand jury returned a 14-count superseding indictment charging defendants Michael Sparks and Joseph Howe with offenses relating to their conduct at the U.S. Capitol on January 6, 2021, including, among other offenses, Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) and (2) (Count One), Civil Disorder under 18 U.S.C. § 231 (Counts Two and Three), and, with respect to defendant Howe, Assaulting, Resisting, and Impeding Certain Officers, under 18 U.S.C. § 111(a) (Counts Four and Five), Destruction of Government Property under 18 U.S.C. § 1361 (Count Six), and crimes relating to his conduct in a restricted building with a deadly and dangerous weapon under 18 U.S.C. § 1752 (Counts Seven, Eight, and Nine).

No trial date is currently set in this case, due to questions relating to the status of Howe's representation.  A status hearing is scheduled for May 5, 2023, via videoconference. As discussed below, the requested subpoenas relate to specific purchases made using Michael Sparks's credit card around the time of the charged offenses, and to a cell phone account defendant Sparks used to communicate with his co-defendant Joseph Howe and others.

In March 2023, this Court authorized the early return of records in response to trial subpoenas to AT&T and Capitol One.  Dkt. No. 54.  Capitol One was served with the authorized subpoena, and produced records in response, including records of Sparks's purchases using the Capitol One account.  Those records showed five purchases at four retailers in the days surrounding Sparks's December 2020 and January 2021 visits to Washington, D.C. that are relevant to the trial in this case.  AT&T responded to the subpoena with some records but no subscriber information, leading investigators to determine that the relevant records are held by Verizon.

## II.    ANALYSIS

Federal Rule of Criminal Procedure 17(c) states that a trial subpoena "may order" the production of "any books, papers, documents, data, or other objects the subpoena designates." The Rule further provides that the Court "may direct" the production of the designated items "in court before trial." This Rule leaves advance production of a response to a document subpoena "to the court's discretion." *United States v. Binh Tango Vo*, 78 F. Supp. 3d 171, 178 (D.D.C. 2015) (quoting *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991)). A party seeking an early-return trial subpoena must show "(1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* (quoting *United States v. Nixon*, 418 U.S. 683, 700 (1974)).

In *Nixon*, 418 U.S. at 699-700, the Supreme Court adopted the Rule 17(c) analysis set forth in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952).  Pretrial production under Rule 17(c) is permissible when: (1) the documents are evidentiary and relevant; (2) they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) the application is made in good faith and is not intended as a "fishing expedition."

These requirements are met with respect to these four subpoenas.  The government sought Capitol One purchase records to show Sparks's planning for and travel to the events in Washington D.C.  *See* Unopposed Motion for Early Return of Trial Subpoenas, filed Mar. 9, 2023 (Dkt. No. 53), at 4.  As expected, those records indeed show evidence that Sparks rented a vehicle (a $531 purchase at Enterprise Rent-A-Car on January 8, 2021), and they show

evidence of his travel to DC (two $38 parking charges in Washington, D.C. on January 6 and 7, 2021).  They also show evidence of Sparks's December 2020 visit to D.C. (a $16 charge at Holiday Inn Capitol in Washington, D.C. on December 12, 2020).

Of particular interest are six charges Sparks made at retailers that sell firearms, ammunition, and other weapons.  As noted in the government's March 2023 motion for early return of trial subpoenas relating to the Capitol One records, on December 10, 2020, Sparks used his credit card through PayPal to buy a 1/2-28, 5/8-24 Fuel Filter, Solvent Trap Kit for NAPA 4003, WIX 24003 (Color: Black, Size: 6'', Type: 5/8-24).  *Id.*  As previously noted, according to open-source information available online, this product is marketed as easily capable of being transformed into a homemade firearms suppressor, but can be sold in a manner that avoids attention and suspicion since firearms suppressors are highly regulated under the National Firearms Act.  According to FBI reporting, the item title for Sparks's purchase, "1/2-28 5/8-24" describes the two most common barrel size and thread pitch for pistols and rifles.

Sparks can be seen in a number of videos taken on January 6, 2021, at the Capitol wearing body armor, which also may have been purchased in the leadup and planning stages of his trip to Washington, DC, and which also may have been purchased using the Capitol One credit card that was the subject of the March subpoena.  This is corroborated by records from Capitol One, which show that Sparks used the credit card at the following retailers:

| Date | Description | Amount |
|------|-------------|--------|
| Dec 10 | BASS PRO ONLINE U.S.8002277776MO | $370.99 |
| Dec 10 | PAYPAL *MAIZEMAOYIY4029357733CA | $29.98 |
| Dec 12 | KENTUCKY GUN CO.502-348-3594KY | $185.29 |
| Jan 2 | KENTUCKY GUN CO.BARDSTOWNKY | $43.98 |

4

| Jan 4 | T-BOX TACTICAL IIVINE GROVEKY | $95.40 |
|---|---|---|
| Jan 10 | WOODS ARMORY LLCELIZABETHTOWNKY | $381.04 |

As these records show, Sparks spent more than $1,100 at retailers specializing in firearms, ammunition, and related items.  The timing of these purchases makes them particularly relevant; Sparks made three purchases in the days immediately preceding his trip to Washington, D.C. on December 12, 2020, two purchases immediately before his trip to Washington, D.C. for January 6, 2021, and one large purchase on January 10, 2021, after Sparks learned that he was wanted by the FBI for his role in the attack on the U.S. Capitol. No additional information about these six charges is available in the Capitol One records, but sales receipts and other records from each retailer will establish the specific items Sparks purchased and shed light on his planning and preparation for the events of January 6, 2021.

With respect to the cell phone records from Verizon, records obtained from Sparks's cell phone indicate that Sparks and Howe communicated several times between November 2020 and January 2021, during the relevant time period when they planned and then executed a trip to Washington, DC, and its aftermath.  In a consent search of Sparks's cell phone, FBI agents located records showing that Sparks traded phone calls and text messages with the cell phone number associated with Howe (which was stored in Sparks's phone as "Jo Jo").  These records reflect four telephone calls between Howe and Sparks in the days after January 6, 2021.  In addition, these records show that Sparks and Howe exchanged approximately 33 private text messages and one group message between December 19, 2020, and January 22, 2021.  But these records also indicate that Sparks deleted all of the private messages he exchanged with Howe, leaving no recoverable content on Sparks's phone.  And while there is no deletion mark on the sole group message, the content of that message is also not

recoverable, indicating that it may also have been deleted or otherwise removed from Sparks's phone.  Based on this information, it is also possible that Sparks and Howe exchanged more than 33 messages during the period between November 1, 2020, and January 31, 2021, but records of those text exchanges were entirely deleted or removed from Sparks's phone.

Records were obtained from AT&T relating to Sparks's cell phone account, but while those records included roaming data, they did not include subscriber information.  Upon further review of these records and other available evidence, investigators concluded that Verizon holds subscriber information and call or text message detail records relating to Sparks's cell phone account.  Records from Verizon will provide evidence of the amount and type of communication between co-defendants Sparks and Howe, and among their travel companions.  They will also provide evidence of the deletion of evidence from the phone Sparks voluntarily provided to the FBI.  Accordingly, these records are relevant to the defendants' planning and activities surrounding January 6, 2021, and efforts to conceal those activities from later investigation by law enforcement.

The proposed subpoenas thus meet the requirements for issuance of a Rule 17(c) subpoena. This request is made in good faith for records which will be admissible and relevant to the offenses charged. The information sought will assist the jury in determining Sparks's planning and spending in anticipation of his trip to Washington, D.C., and in determining the nature of the items he had with him at the U.S. Capitol on January 6, 2021.  The government requires the records in advance of trial to allow sufficient time to review those records, allow the defense to review and make use of them, and seek any additional evidence those records uncover.  Further, obtaining the records prior to the date of trial will facilitate the orderly progress of trial by allowing the parties to litigate or resolve any issues of admissibility arising

from the document production before trial begins. *See Bowman Dairy Co. v. United States*, 314 U.S. 214, 219-20 (1951) (noting that an early-return trial subpoena serves the function of expediting trial by allowing for examination of the subpoenaed materials before trial begins). The government anticipates that these retailers will not provide the requested information without a subpoena.

As noted above, Rule 17(c)(1) requires a witness to produce the designated items "in court before trial" and states that "[w]hen the items arrive, the court may permit the parties and their attorneys to inspect all or part of them." The proposed subpoenas require the entities to produce the designated documents at the currently scheduled May 5, 2023, status conference in this case.

The government requests permission to invite the subpoenaed parties to produce the documents to the government electronically in lieu of appearing at the pretrial conference. The government will provide them to the defense as they are received from the subpoenaed parties.  Finally, anticipating that the subpoenaed entities could face logistical constraints in timely producing records, the government further requests permission to accept early or grant any necessary extensions of time for compliance with the subpoena, should such requests be made.

### III.   CONCLUSION

The government respectfully requests the Court to permit service of and obtain the
records sought by the subpoenas attached as exhibits to this motion.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


*/s/ Emily W. Allen*
EMILY W. ALLEN, Cal. Bar No. 234961
SONIA MITTAL
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
(907) 271-4724